**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JOSEPH GILBERT THERIAULT, individually and on behalf of those affected New Direction Trust Company self-directed IRA accountholders whose precious metals were to be on deposit with First State Depository, and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>NEW DIRECTION TRUST COMPANY, and FIRST STATE DEPOSITORY, LLC,<br><br>*Defendants*. | **Case No.**<br><br><br>**CLASS ACTION COMPLAINT** |

### INTRODUCTION

Joseph Gilbert Theriault is the owner of an Individual Retirement Accounts ("IRA") provided and administered through Defendant New Direction Trust Company ("NDTCo"), a Kansas bank and trust company, and invested in precious metals on deposit (or that were represented to be on deposit) at Defendant First State Depository ("FSD"), a Delaware-based precious metals depository. During September 2022, the Commodity Futures Trading Commission ("the CFTC") filed a lawsuit in Delaware federal court against FSD regarding the misappropriation of its customers' precious metals. The Court froze FSD's assets and appointed a receiver, and that receiver set up a publicly available website with information about the CFTC's lawsuit and the receivership. https://fsdreceivership.com/ The receiver retained an accounting firm to inventory the precious metals on deposit at FSD, and, according to its reports, approximately 45% of the missing and apparently misappropriated precious metals, totaling between $25-50 million, are precious metals that were supposed to be on deposit at FSD for NDTCo IRA accountholders.

Plaintiff brings this action both individually and on behalf of a class of similarly situated NDTCo IRA accountholders who have been victimized and damaged by the misappropriation of their precious metals that were supposed to be on deposit at FSD. Plaintiff brings this action by and through his undersigned attorneys based upon personal knowledge, information contained in the September 2022 CFTC lawsuit, information contained in NDTCo account statements and communications, and other information publicly available or obtained through counsel's preliminary investigation. Plaintiff anticipates that discovery will uncover further support for the allegations in this Complaint and, potentially, for additional claims.

As explained below, Defendants FSD and NDTCo have apparently caused or allowed the misappropriation of precious metals owned by Plaintiff and the rest of the putative class, and both Defendants FSD and NDTCo have breached fiduciary and other duties to the class, unjustly enriched themselves through the charging of frivolous administrative fees and otherwise, and violated the Kansas, Vermont, Delaware and other applicable state consumer protection acts. Plaintiff brings this action to remedy this unlawful conduct, obtain compensatory damages, prevent further harm, and obtain equitable relief for the benefit of himself and all the other victimized precious metals NDTCo IRA accountholders. In support of his class claims, Plaintiff states and alleges as follows:

## THE PARTIES

1. Plaintiff is a resident of Vermont.

2. Defendant New Direction Trust Company ("NDTCo") is a Kansas bank/trust company with its principal place of business in Louisville, Colorado, and may be served at its Kansas registered agent office, located at 5901 College Blvd #100, Overland Park, Kansas 66211.

3.      Defendant First State Depository Company, LLC ("FSD") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware, and may be served through its Delaware registered agent, Registered Agents Legal Services, LLC, 1013 Centre Rd, Suite 403S, Wilmington, Delaware 19805.

**J<small>URISDICTION AND</small> V<small>ENUE</small>**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because it is a class action case, the matter in controversy exceeds $5 million, and, because Plaintiff is a citizen of Vermont and neither of the Defendants is a citizen of Vermont, thus satisfying the requirement that "any member of a class of plaintiffs is a citizen of a State different from any defendant."

5.      The Court has personal jurisdiction over Defendant NDTCo pursuant to Fed. R Civ. P. 4(k)(1)(A) because NDTCo is a Kansas corporation, actively registered to do business in Kansas, and is subject to general jurisdiction in Kansas.

6.      The Court has personal jurisdiction over Defendant FSD pursuant to Fed. R Civ. P. 4(e) and the Kansas long-arm statute, K.S.A. 60-308, which allows for Kansas personal jurisdiction over an out-of-state defendant on the basis of certain acts committed by that out-of-state defendant, provided that the defendant has a sufficient connection with the state. In this case, Defendant FSD has submitted to personal jurisdiction in Kansas under the Kansas long-arm statute because Defendant FSD transacted business with a Kansas corporation, Defendant NDTCo, and its IRA precious metals accountholder customers, those NDTCo IRA precious metal accountholders who are themselves citizens of Kansas, and a Kansas-based precious metals dealer referred to in the CFTC Complaint as "Metals Dealer 1" (K.S.A. 60-308(b)(1))(A)); entered into contracts with residents of the State of Kansas to be performed in whole or in part by either party

in Kansas (K.S.A. 60-308(b)(1)(e)); caused persons in Kansas injury arising out of an act or omission by FSD while FSD was engaged in solicitation activities in Kansas and providing services used or consumed in Kansas in the ordinary course of trade or use (K.S.A. 60-308(b)(1)(g)). Furthermore, Defendant FSD is subject to personal jurisdiction in Kansas pursuant to K.S.A. 60-308 because FSD has contact with Kansas which would support jurisdiction consistent with the constitutions of the United States and Kansas and has substantial, continuous and systematic contact with Kansas which would support jurisdiction consistent with the constitutions of the United States and Kansas.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (c)(2).

## GENERAL ALLEGATIONS

8.      NDTCo and its predecessors in interest were founded for the purpose of enabling individuals to invest their IRAs in alternative investments, such as precious metals and real estate.

9.      NDTCo's Articles of Incorporation on file with the Kansas Secretary of State's office identify the "Nature of [NDTCO's] Business" as follows, including but not limited to "buy[ing] and sell[ing] … gold, silver, coin or bullion":

i.      To receive for safekeeping personal property of every description;
ii.     to act as a custodian, designee, transfer agent, or registrar;
iii.    to act as attorney in fact in any agreed upon capacity
iv.     to receive money for investment in real or personal property of every kind and nature;
v.      to buy and sell foreign or domestic exchange, gold, silver, coin or bullion and;
vi.     to act as an escrow agent in any agreed upon capacity.

10.     NDTCo's website similarly describes its business as "receiv[ing] for safekeeping personal property of every description," "to act as a custodian," "to receive money for investment in real or personal property of every kind and nature," and "to buy and sell foreign or domestic gold, silver, coin, or bullion."

11.     NDTCo today manages $2.8 billion in assets spread across several platforms.

12.     One of the programs NDTCo offers is self-directed precious metals IRAs.

13.     FSD's website describes itself as a "private depository" that offers "a full range of precious metals custody, shipping and accounting services to both commercial and individual participants in the rare coin and precious metals markets." FSD provides depository storage services to Customers, but also stores precious metals and valuables for a number of Clients whose assets are not part of the Programs. FSD has never been registered with the Commission in any capacity.

14.     FSD purported to hold secure and protect the physical assets of its customers.

15.     FSD claimed to carry insurance sufficient to cover all physical assets stored at its depository.

16.     Since at least since 2010, First State Depository ("FSD") was one of only a few depositories specifically listed on NDTCo's precious metals IRA account forms.

***Plaintiff's Precious Metals IRA Account with NDTCo and FSD***

17.     During 2012, Plaintiff rolled over more than $300,000 in retirement savings in his employer-sponsored 401k plan into a precious metals self-directed IRA with Defendant NDTCo's predecessor in interest, New Direction IRA, Inc.

18.     At that time, Plaintiff executed a Precious Metals Buy Direction Letter form provided to him by New Direction IRA, Inc.

19.     On that form, Plaintiff identified as his chosen precious metals custodian Defendant FSD in Wilmington, Delaware.

20.     Plaintiff identified Defendant FSD as his precious metals custodian because, on its website and in its forms, FSD was one of a very few precious metals depositories specifically

identified by New Direction IRA. Indeed, on at least one of its forms, FSD was the very first, and only one of two, precious metals custodians listed, with its contact information included.

21.     On its website and in its forms, New Direction IRA, Inc. and its successor in interest, NDTCo, stated that these precious metals depositories were places where the precious metals in which Plaintiff's IRA was invested would be "safely locked away and insured," which representations Plaintiff and other NDTCo IRA accountholders reasonably relied upon.

22.     NDTCo IRA accountholders such as Plaintiff also received reassurances from NDTCo that FSD, in particular, was maintaining their precious metals in "segregated storage" and "not co-mingled with any other metals owned by others":

**PRECIOUS METALS DEPOSITORY HOLDINGS ELECTION FORM**

I acknowledge that I have elected to store my self-directed IRA owned precious metals with **FIRST STATE DEPOSITORY (First State)** (100 Todds Lane, Wilmington, DE 19802). I understand that the storage fee will be billed upon receipt of my first metals deposit at **First State** and billed annually thereafter. The fees will be included on the annual invoice from Entrust New Direction for administrative services to the IRA. I also understand that the storage fee may be paid with undirected funds from my Entrust New Direction IRA or can be paid from personal funds. All payments must be made to Entrust New Direction IRA as the administrator for my IRA.

**First State**, offers only segregated storage for your IRA accounts (metals are not co-mingled with any other metals owned by others). Each Entrust New Direction IRA account held at First State is an Individual Sub-Account of Entrust New Direction; having its own reporting and physical storage per IRA individual. Additional details regarding the storage of metals at First State Depository may be found in the Depository Custody agreement which is available upon request from First State Depository. The fee structure is listed below.

23.     After opening his IRA account with New Direction IRA, Inc., Plaintiff received the following confirmation letter from New Direction:



24.     Thereafter, Plaintiff received annual statements from New Direction IRA, Inc. and, later, its successor in interest, NDTCo, through a "portal" through which Plaintiff could access his account information and confirm the status and value of Plaintiff's IRA account. identifying the amount and value of his precious metals on deposit at FSD.

25.     Plaintiff received spotty and irregular statements from FSD, and FSD would not discuss matters related to Plaintiff's deposits directly with Plaintiff or other NDTCo clients, but instead insisted that these NDTCo accountholders communicate by and through NDTCo. Plaintiff therefore necessarily relied on NDTCo for accurate information concerning the value of his precious metals on deposit at FSD.

26.     The NDTCo account statements and portal consistently reflected that Plaintiff's IRA maintained an account balance value at or near what Plaintiff reasonably expected and because of this manifested no cause for alarm that the precious metals that were represented as on deposit at FSD were not in fact on deposit with FSD.

27.     For example, for the year of 2022, Plaintiff received the following statement from NDTCo:

Joseph G Theriault
196 Forty Acre Lane
Williston, VT 05495

Joseph G Theriault ROTH
Roth IRA
Account Number: 1007629

**Important Statement Information**

This is not an invoice. Please be advised this statement may be used as a substitute Form 5498. We will process and mail your Form 5498 in May. This statement shows assets in your account as of December 31 of the statement year. Log in to portal.ndtco.com to view the most current details of your account. On Demand Statements are also available anytime through the NDTCO Client Portal. The IRS requires us to provide the following information on income tax withholding for withdrawals, also known as distributions. Unless you instruct us not to withhold taxes, the IRS requires us to withhold at least 10% of your withdrawals from traditional IRAs, SEP- IRAs and Simple IRAs for federal income taxes. When you request a distribution online, by phone, or by mail, you can: 1) let us automatically withhold 10% of the distribution, 2) ask us to withhold more than 10% of the distribution or 3) ask us not to withhold taxes at all. If you instruct us not to withhold taxes, you may owe federal income tax on the taxable portion of your IRA distributions, and you may have to make estimated tax payments. If your estimated payments and withholdings fail to satisfy your tax obligations, you may be subject to IRS penalties. You may want to consult a tax advisor or CPA regarding your personal situation.

| Account Summary | | |
|---|---|---|
| **ASSET NAME** | **ASSET TYPE** | **MARKET VALUE ($)** |
| 100 OZ. SILVER BAR (90 units) | Precious Metals | 209,916.00 |
| | **TOTAL:** | **$209,916.00** |

28.     Each year, NDTCo billed Plaintiff and other IRA accountholders regularly for a host of different administrative and storage fees of NDTCo and of FSD, which fees Plaintiff paid in reliance on the representations of NDTCo and FSD that his IRA's account balance was as stated in the statements he received from NDTCo and FSD and that his precious metals represented to be on deposit at FSD were in fact being maintained in segregated storage by FSD at its Wilmington, Delaware facility.

***Plaintiff Receives Call from the Federal Bureau of Investigation***

29.     On or about August 30, 2022, an FBI agent out of the Wilmington, Delaware office contacted Plaintiff, telling Plaintiff that there was an investigation underway regarding apparent misappropriations of precious metals that were supposed to be on deposit at FSD.

30.     The FBI agent warned Plaintiff that it appeared Plaintiff may be one of the FSD customers victimized by this misappropriation.

31.     Upon information and belief, NDTCo was already well aware of the investigation underway into the apparent misappropriation of its IRA clients' precious metals that were

represented to be securely on deposit at FSD.

32.     Plaintiff immediately began communicating with NDTCo about removing his precious metals from FSD to another depository and filled out forms necessary to transfer his precious metals from FSD to a different depository.

33.     Neither NDTCo nor FSD were responsive to Plaintiff in a timely manner. NDTCo took Plaintiff's calls, but it would drag its feet in responding to requests for information regarding the transfer of precious metals on deposit at FSD to a different depository.

***The CFTC's Lawsuit***

34.     On September 27, 2022, the Commodity Futures Trading Commission ("the CFTC") filed a lawsuit in Delaware federal court against FSD and others regarding the misappropriation of customers precious metals that were to be on deposit and secured at FSD's Wilmington, Delaware office.

35.     The CFTC's lawsuit is styled *Commodity Futures Trading Commission v. First State Depository Company, LLC, Argent Asset Group LLC, and Robert Leroy Higgins*, Case No. 1:22-cv-01266-RGA, in The United States District Court for the District of Delaware (hereinafter "the CFTC Lawsuit").

36.     Plaintiff hereby incorporates by reference herein the CFTC's Complaint and all of the filings in the CFTC Lawsuit.

37.     In its Complaint, the CFTC alleged FSD and the other named defendants had violated the Commodity Exchange Act and CFTC regulations.

38.     In its Complaint, the CFTC alleged that a Robert Higgins of Westchester, Pennsylvania owns and operates both FSD and a company called The Argent Group out of the same Wilmington, Delaware office.

39.    The CFTC brought claims against The Argent Group, Higgins, and FSD ("the CFTC Defendants").

40.    The CFTC alleges that these CFTC Defendants were allowed to engage in fraudulent and deceptive schemes regarding the purchase and exchange of precious metals.

41.    The CFTC complaint summarizes the misdeeds as:

> 3.    In carrying out the Scheme, Defendants:
>
>    a.   misappropriated Customer funds and assets;
>
>    b.   led Customers to believe that their metal was held at FSD, when in fact it was not;
>
>    c.   led Customers to believe that Defendants had obtained silver for Customers, when in fact they had not;
>
>    d.   misappropriated funds and assets belonging to certain non-Customer clients ("Clients"), and deceived those Clients when they asked FSD to return their assets; and
>
>    e.   deceived Customers and Clients regarding the insurance coverage that FSD maintained for Customers and Client assets, including by leading Customers and Clients to believe their assets were fully insured for 100% of their value, when in fact they were not.

42.    The CFTC seeks restitution, disgorgement, civil monetary penalties, permanent trading and registration bans, and a permanent injunction.

43.    Paragraph 18 of the CFTC Complaint also identifies a relevant third-party believed to be NDTCo or an affiliate thereof:

## IV.     RELEVANT NON-PARTIES

18.     **Metals Dealer 1** is a company based in Kansas that specializes, among other things, in the sale and promotion of precious metals as an investment vehicle, including for individuals wishing to invest in precious metals individual retirement accounts ("IRAs").  Many of Metals Dealer 1's customers entered the Silver Lease Program so that they could obtain monthly income from metal they deposited in an IRA.

44.     Among the schemes wrought by the CFTC Defendants included a program marketed as the "Maximus Program" and a "Silver Lease Program."

45.     The "Silver Lease Program" was primarily operated by the unidentified Kansas third-party, named "Metals Dealer 1" in the CFTC complaint.

2.     In the course of operating the Maximus Program, Defendants deceived participants in the Maximus Program ("Maximus Customers") and participants in a parallel lease program called the Silver Lease Program ("Silver Lease Customers") that was primarily operated

1

by a non-party referred to herein as Metals Dealer 1, and its CEO, Individual 1.[1]  Although all of the silver involved in the Silver Lease Program became part of the Maximus Program, the Maximus Program was not limited to metal owned by Silver Lease Customers.

46.     Per the CFTC Complaint, the Kansas-Based Metals Dealer 1 realized a 10-basis points profit on client assets invested in the Silver Lease Program:

42.     In other words, Metals Dealer 1 essentially served as a vehicle for directing ASEs to Argent's Maximus Program.  Consequently, a large majority of the ASEs in the Maximus Program came from Metals Dealer 1 and Silver Lease Customers.  In light of Argent's agreement to pay Metals Dealer 1 $0.20 for each ASE pledged to the Maximus Program, Metals Dealer 1's Silver Lease Payments to Customers were essentially a pass-through arrangement in which Argent paid $0.20 to Metals Dealer 1 for each ASE that Silver Lease Customers held, and Metals Dealer 1 paid up to $0.10 per ASE to Silver Lease Customers, keeping the rest as profit.

***The Receiver Seizes FSD Assets, and the Accounting Firm Takes inventory***

47.     Within two days of the CFTC's filing, on September 29, 2022, the Delaware federal court entered a restraining order freezing assets controlled by FSD and the other defendants and appointing Dallas attorney Kelly Crawford as the temporary receiver.

48.     On or about October 5, 2022, federal agents raided the FSD and Argent Group offices in Wilmington, Delaware.

49.     The receiver took possession and control of FSD and enlisted an accounting firm called Baker Tilly to inventory and assess FSD assets.

50.     The receiver set up a publicly available website with information about the CFTC's lawsuit and the receivership, including the Baker Tilly accounting firm's reports to the receiver and supplements thereto: https://fsdreceivership.com/.

51.     Plaintiff hereby incorporates by reference herein the receiver's website, https://fsdreceivership.com/, including all the accounting firm's reports and any appendix or supplements to those reports.

52.     The accounting firm discovered that up to $110.4 million assets were missing from FSD, mainly physical gold and silver.

53.     Of the missing gold and silver, 90% were held in IRA accounts.

54.     Over 50% of those IRA accounts were administered by NDTCo.

55.     FSD failed to keep records of all NDTCo accounts.

56.     Upon inspection, many NDTCo accounts, including apparently the account of Plaintiff Theriault, were seemingly not maintained in FSD's books and not funded with precious metals as represented on the statements that Plaintiff had received from NDTCo and FSD.

57.     Photos from the accounting firm's premises inspection and its reports are now publicly available on the receiver's website. There is estimated $56.8 million to $110.4 million of assets missing from FSD, primarily in gold and silver.

58.     Of the up to $110.4 million in missing assets, 90% were held in IRA accounts.

59.     NDTCo administered up to 50% of those IRA accounts.

60.     Accordingly, the total losses to the affected NDTCo IRA accountholders are between approximately $25 million and $50 million.

61.     Upon information and belief, all or some of the CFTC Defendants misappropriated and misused the precious metals of Plaintiff and the other NDTCo precious metals IRA accountholders to profit and enrich themselves.

62.     The accounting firm's report identifies discrepancies in 1,006 NDTCo IRA accounts.

63.     These discrepancies appear to fall into two categories:

     a.   Account exists, with partially intact assets on deposit at FSD; or

     b.   Account exists, but with no assets at all on deposit at FSD.

64.      In addition, there appears to be a group of NDTCo IRA accountholders, including Plaintiff, whose NDTCo IRA accounts do not currently exist on FSD books, even though NDTCo and the NDTCo portal has continuously reflected that those accounts exist and FSD had confirmed the existence of that account, with the precious metals on deposit at FSD.

***NDTCo's Failure to Timely Notify Clients and Knowledge of Wrongdoing***

65.     NDTCo failed to take reasonable care in identifying suitable depositories for its clients and failed to notify clients when it had reason to know that depositories were no longer suitable or feasible.

66.     NDTCo had notice that FSD was not timely acquiring or securing precious metals for NDTCo's clients but failed or refused to notify Plaintiff and others of this fact. Upon information and belief and based on the CFTC Complaint, NDTCo had such knowledge by no later than January of 2019.

67.     Despite its knowledge of the federal investigation regarding FSD, the filing of the CFTC Lawsuit on September 27, 2022, the Delaware federal court's freezing of FSD's assets on September 29, 2022, as well as the appointment of the receiver, NDTCo made no efforts to timely notify or warn its clients of these developments.

68.     When NDTCo finally did provide some notification to its clients, it sent the following email, on November 3, 2022, nearly a month after the Receivership was put in place:

Thank you for being a client with New Direction Trust Company. **We wanted to inform you that we have recently learned that your chosen precious metals depository, First State Depository Company, LLC, has been placed under Receivership.** This means that a court has taken jurisdiction and possession over the assets and records of First State Depository and placed these under the control of a court-appointed Receiver.

Please refer to the following for additional information regarding this situation:

**How can I learn more about Receivership and who the Receiver is for First State Depository?**
Please refer to **https://fsdreceivership.com** for all questions regarding the First State Depository Receivership. This website will provide the most up-to-date information regarding your precious metal assets and the claims process to date.

**What does this mean for me and my account holdings at First State Depository?**
Any pending distributions, sales, liquidations, or depository transfers related to assets held with First State Depository are currently on hold.

**Can I get my metals moved to another depository?**
Unfortunately, no. All transactions and metal movements have been postponed until authorization is given by the Receiver, Including transfer requests.

69.     NDTCo knew or had reason to know of some or all the wrongdoings alleged in the CFTC's complaint against FSD, Higgins, and the Argent Group.

70.     NDTCo failed to inform their clients of that knowledge, knowing that providing that knowledge would cause clients to attempt to withdraw their precious metals from FSD and/or move their IRA investments through NDTCo to a different IRA.

71.     NTDCo was derelict in its duty as IRA administrator and custodian in allowing FSD's illegal activities to proliferate while NDTCo was receiving administrative fees from clients and a 10-basis points kickback from FSD in connection with the Silver Lease Program, as alleged in the CFTC's Complaint.

72.     At some point, NDTCo removed FSD from the list of ostensibly suitable and appropriate precious metals depositories identified on its website and forms.

73.     At some point, NDTCo created or maintained a page on its website in which it identified both FSD and The Argent Group as "administratively infeasible" companies. The page describing FSD and the Argent Group as "administratively infeasible" companies was not readily accessible on the NDTCo website and could only be accessed by searching for the names of those companies described as "administratively infeasible."

74.     It is not clear how long NDTCo has considered FSD to be "administratively infeasible," but Plaintiff was never informed of NDTCo's conclusion in this regard or provided a warning by NDTCo that it considered FSD was "administratively infeasible." Plaintiff reasonably relied upon NDTCo's silence in this regard and, particularly given NDTCo's previous endorsement of FSD at the time Plaintiff opened his IRA account, reasonably relied on NDTCo to relay any concerns or meaningful information regarding FSD's suitability as a precious metals depository of choice for a NDTCo IRA accountholder.

75.     Despite FSD not having even a record of Plaintiff's account as of October 5, 2022, Plaintiff was still charged and paid administrative fees to FSD and to NDTCo.

## CLASS ACTION ALLEGATIONS

76.     In addition to bringing this action on behalf of the Plan, Plaintiff also brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class defined as follows:

> All affected New Direction Trust Company precious metals IRA accountholders for whom the designated precious metals depository was First State Depository and whose precious metals were supposed to be on deposit at First State Depository as of September 27, 2022, when the CFTC Lawsuit was filed, but whose accounts were not fully intact.

77.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

78.     The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The aforementioned report of the receiver's chosen accounting firm, Baker Tilly, identifies discrepancies in 1,006 NDTCo IRA precious metals accounts.

79.     The number of class members is so large that joinder of all its members is impracticable.

80.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members.

81.     All these NDTCo IRA precious metals accountholders victimized by the CFTC Defendants suffered loss through the misappropriation of their precious metals or other assets by the CFTC Defendants, NDTCo's failures in this regard, and the administrative fees charged by both FSD and NDTCo.

82.     Common legal and factual questions include, but are not limited to:

A.      Whether FSD was negligent in handling client assets;

B.      Whether NDTCo was negligent in handling client accounts or identifying FSD as a suitable and appropriate precious metals depository;

C.      Whether FSD committed fraud and affirmative or negligent misrepresentations of fact by representing that all client assets were 100% fully insured and protected;

D.      Whether NDTCo knew or had reason to know of the activities of FSD and the other CFTC Defendants outlined in the CFTC Complaint and failed to inform its IRA accountholders of these activities;

E.      Whether NDTCo committed fraud by silence or affirmative or negligent misrepresentations by failing to inform or warn its IRA account holders regarding FSD, its lack of adequate insurance and its failure to protect client assets, as well as the other misdeeds of the CFTC Defendants outlined in the CFTC Complaint;

F.      Whether the administrative fees charged by FSD and NDTCo unjustly enriched them;

G.      Whether the actions or inactions of FSD and NDTCo constitute deceptive or unconscionable practices under the Kansas Consumer Protection Act or violations of other applicable state consumer protection acts; and

H.      Whether FSD or NDTCo breached contractual obligations to the Class.

83.     Plaintiff's claims are typical of the claims of the members of the Class because his claims, and the claims of all Class members, arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

17

84.     Plaintiff will fairly and adequately represent the Class and has retained counsel competent in the prosecution of class action litigation.

85.     Plaintiff has no interests antagonistic to those of other members of the Class.

86.     Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

87.     Plaintiff has standing to bring this action on behalf of similarly situated individuals because they are or during the Class Period were accountholders with NDTCo in a precious metals IRA, with the precious metals to be on deposit at FSD, and were injured by Defendants' unlawful conduct.

88.     Plaintiff is entitled to receive benefits in the amount of the difference between the value of their accounts currently or as of the time the account was distributed, and what their accounts are or would have been worth, but for Defendants' misconduct as described herein.

89.     Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

90.     Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

91.     In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only

individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

### COUNT I: BREACH OF FIDUCIARY DUTIES AGAINST BOTH DEFENDANTS

92.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

93.    Plaintiff entered into a business relationship with NDTCo and with FSD under which Plaintiff entrusted his IRA account's precious metals to FSD as a precious metals depository identified and recommended by NDTCo.

94.    In so doing, Plaintiff placed trust and confidence in both NDTCo and FSD to manage his IRA account and secure and maintain his precious metals and provide the services they claimed to provide.

95.    Both NDTCo and FSD were bound to act in good faith and with due regard to Plaintiff.

96.    NDTCo and FSD had the duty to act with good faith and loyalty to Plaintiff's interests and not to engage in self-dealing.

97.    NDTCo and FSD breached their duties.

98.    These fiduciary breaches by NDTCo and FSD caused Plaintiff damage, and similarly caused damages to those similarly situated NDTCo IRA accountholders who had their precious metals on deposit at FSD.

### COUNT II: NEGLIGENCE AGAINST NDTCo

99.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

100.    Because NDTCo undertook to identify appropriate depositories for its clients, NDTCo had a duty to identify only depositories that were suitable for its clients' assets.

101.    NDTCo further had a duty to prevent illegal activities involving its clients' assets from proliferating.

102.    NDTCo knew or had reason to know that FSD was not a suitable or trustworthy depository.

103.    NDTCo had notice that FSD was not timely acquiring or securing precious metals for NDTCo's clients but failed or refused to notify Plaintiff and others of this fact. Upon information and belief and based on the CFTC Complaint, NDTCo had such knowledge by no later than January of 2019.

104.    NDTCo failed to take reasonable care in identifying suitable depositories for its clients and failed to notify clients when it had reason to know that depositories were no longer suitable or feasible.

105.    NDTCo's recommendation of FSD caused Plaintiff to deposit his precious metals with FSD.

106.    At some point, NDTCo knew that FSD was "administratively infeasible."

107.    NDTCo failed to timely share its knowledge of FSD's untrustworthiness with its clients.

108.    NDTCo's negligence caused Plaintiff to suffer damages, and similarly caused damages to those similarly situated NDTCo IRA accountholders who had their precious metals on deposit at FSD.

## COUNT III: NEGLIGENCE AGAINST FSD

109.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

110.     FSD had a duty to hold and secure customers' precious metals assets, including those of Plaintiff, as it claimed to do, and protect those assets from third parties.

111.     FSD claimed that its transactions were "fully transparent," and that it provided "accurate and timely reporting."

112.     FSD failed to hold customers' assets and maintain accounts, including Plaintiff's account.

113.     FSD failed to protect customers' assets from third parties, including Higgins and The Argent Group, according to the CFTC Lawsuit.

114.     FSD failed to make Plaintiff's deposits accessible when reasonably requested by Plaintiff.

115.     Up to $110.4 million of assets are missing from FSD storage.

116.     FSD failed to keep accurate records regarding client accounts, including failing to keep any records of multiple client accounts.

117.     FSD's failure to maintain client records and precious metals assets caused Plaintiff to suffer damages, and similarly caused damages to those similarly situated NDTCo IRA accountholders who had their precious metals on deposit at FSD.

## COUNT IV: CONVERSION AGAINST FSD

118.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

119.   FSD held Plaintiff's property for the purpose of safeguarding Plaintiff's investment.

120.   On its website, FSD claimed that the physical assets "always remain physically stored in our depository, in your account and your legal property at all times."

121.   FSD had no record of Plaintiff's account.

122.   Rather than hold Plaintiff's property in his account, FSD or its agents intentionally and without authorization exercised the right of ownership over Plaintiff's precious metals assets through the misappropriation and misuse of those assets.

123.   By so doing, FSD converted Plaintiff's property for its own use contrary to the terms agreed to by Plaintiff, and similarly converted the property of those similarly situated NDTCo IRA accountholders who had their precious metals on deposit at FSD.

124.   When Plaintiff attempted to retake physical possession of his precious metals at FSD, FSD refused to allow him to set an appointment to physically regain possession despite a two-weeks' advance notice.

125.   Thus, Plaintiff and those similarly situated NDTCo IRA accountholders are each owed the fair and reasonable market value of each individual NDTCo IRA accountholder's precious metals deposit.

### COUNT V: FRAUD AGAINST FSD

126.   Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

127.   FSD made multiple false or untrue statements of existing and material fact, including statements regarding the amount of its insurance, the type of insurance, the location of client assets, and its ability to keep accurate records.

128.    FSD knew its statements were false or was reckless regarding the truth of its statements.

129.    FSD made its statements intentionally, with the intention of inducing others to rely on the statements.

130.    As FSD noted, it knew "that asset safety [and[ transaction accuracy . . . are of paramount importance to every depository customer."

131.    Plaintiff reasonably relied on the statements made by FSD, including Account Summary statements relayed to him by NDTCo.

132.    By relying on FSD's statements, Plaintiff suffered damage, as did those similarly situated NDTCo IRA accountholders who had their precious metals on deposit at FSD and relied on the statements of FSD.

### COUNT VI: FRAUD BY OMISSION AGAINST NDTCo

133.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

134.    NDTCo knew or had reason to know that there were reasons to be suspicious of the activities of FSD or its principals or agents and that FSD was not trustworthy.

135.    Plaintiff did not know of FSD's internal failings, nor could Plaintiff reasonably discover those issues.

136.    NDTCo, because it had listed FSD as a depository on its paperwork to Plaintiff, had a duty to communicate any suspicions or knowledge of FSD's untrustworthiness to Plaintiff.

137.    NDTCo knew that FSD was administratively infeasible.

138.    NDTCo keeps a list of "Administratively Infeasible Companies," but the list is not easily or readily accessible for its clients.

139.    NDTCo removed FSD from its list of available depositories.

140.    NDTCo knew its clients had, in very large amounts, entrusted FSD with their funds, so much so that a large percentage of the precious metals on deposit at FSD were precious metals owned by NDTCo IRA accountholders.

141.    Upon information and belief, NDTCo was secretly receiving a 10-basis points kickback on certain of its clients' assets held at FSD, it but did not disclose that fact and that conflict of interest to Plaintiff or other NDTCo IRA accountholders who had their precious metals on deposit at FSD.

142.    NDTCo intentionally took steps silently as a result of its knowledge about FSD and failed to communicate its knowledge to Plaintiff.

143.    Plaintiff relied on NDTCo's listing of FSD as a trustworthy depository.

144.    Plaintiff relied on the NDTCo provided account statements and portal to provide accurate information regarding the value of Plaintiff's precious metals IRA account; however, according to the information discovered by the receiver and accounting firm in the CFTC Lawsuit, the account information that NDTCo provided on the portal was false and inaccurate.

145.    Plaintiff sustained damages because of NDTCo's failure to communicate its knowledge about FSD to Plaintiff, as did those similarly situated NDTCo IRA accountholders who had their precious metals on deposit at FSD and relied on NDTCo to provide information and knowledge regarding FSD.

### COUNT VII: UNJUST ENRICHMENT AGAINST BOTH DEFENDANTS

146.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

147.    Plaintiff conferred a benefit upon NDTCo by using its services and paying it fees.

148.     Plaintiff conferred a benefit upon FSD by using its purported services and paying it fees.

149.     FSD and NDTCo have retained all benefits they have received from Plaintiff.

150.     Under the circumstances, allowing FSD and NDTCo to retain the benefits provided by Plaintiff would be unjust, just as it would be unjust as to all of those similarly situated NDTCo IRA accountholders who paid fees to FSD and NDTCo and, like Plaintiff, had their precious metals on deposit at FSD compromised.

**COUNT VIII: CONSTRUCTIVE TRUST AGAINST FSD**

151.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

152.     As discussed above, FSD committed fraud.

153.     FSD breached its legal duty to Plaintiff to keep accurate records and hold Plaintiff's assets as reflected in its account statements and by its own statements.

154.     Plaintiff and FSD were in a confidential, business relationship.

155.     By failing to properly keep Plaintiff's account, FSD betrayed Plaintiff's trust.

156.     Under the circumstances, it would be unjust to allow FSD to acquire the property that was entrusted to it by Plaintiff, and the Court should impose a constructive trust in favor of Plaintiff as to those precious metals owned by Plaintiff and that were to be on deposit at FSD, as well as to those precious metals of all similarly situated NDTCo accountholders whose precious metals were to be on deposit at FSD.

**COUNT IX: CONSUMER PROTECTION ACT VIOLATIONS AGAINST BOTH DEFENDANTS**

157.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

158.    Under Kansas, Delaware, and Vermont law, Plaintiff is a consumer, NDTCo and FSD are suppliers, and both NDTCo and FSD engaged in unfair, deceptive, and unconscionable acts or practices in commerce.

159.    NDTCo represented that FSD was a trustworthy depository where its clients could store their precious metals.

160.    Plaintiff understood that NDTCo's inclusion of FSD on its forms indicated it was a depository trusted by NDTCo.

161.    Because NDTCo supported FSD as a depository, Plaintiff decided to store his precious metals at FSD.

162.    Because NDTCo continued to support FSD as a depository and did not warn Plaintiff about FSD when it had reason to know or suspect that there might be issues or concerns with FSD and, at some point, concluded that FSD was administratively infeasible, Plaintiff continued to store his precious metals at FSD.

163.    FSD represented that it carried sufficient insurance to cover any losses and that it would maintain and secure physical possession of all of Plaintiff's and its other clients' precious metal assets.

164.    Plaintiff understood these representations to mean what they said.

165.    FSD failed to provide its services in the manner and nature it advertised.

166.    By their foregoing actions or inactions, as well as by the other acts alleged herein and in the CFTC Lawsuit, FSD and NDTCo committed violations of the Kansas, Delaware, and Vermont consumer protection statutes.

167.    Because of FSD's and NDTCo's violations of these consumer protection acts and unfair practices in commerce, Plaintiff and those similarly situated NDTCo IRA accountholders

suffered damages, and FSD and NDTCo are subject to civil penalties as outlined in the respective state consumer protection statutes.

<u>COUNT X: BREACH OF CONTRACT AGAINST BOTH DEFENDANTS</u>

168.   Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

169.   Plaintiff entered into a written and implied contract with NDTCo.

170.   Under the contract, NDTCo agreed to provide accurate account information as the IRA custodian, reflecting accurate information as to precious metals depositories and accurate account values and information regarding the precious metals held at those precious metals depositories.

171.   In return, Plaintiff paid NDTCo administrative and other fees and used NDTCo as his account administrator.

172.   Plaintiff entered into a contract with FSD.

173.   Under the contract, FSD agreed to secure Plaintiff's precious metals and maintain his account accurately.

174.   In return, Plaintiff agreed to allow FSD to hold his precious metals and paid FSD.

175.   Both NDTCo and FSD breached their contracts with Plaintiff.

176.   NDTCo failed to provide accurate information regarding FSD and accurate account information regarding Plaintiff's investments at FSD.

177.   FSD failed to keep and secure Plaintiff's precious metals secure and record his account information.

178.   Because of NDTCo's and FSD's breaches of contract, Plaintiff and those similarly situated NDTCo IRA accountholders suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.      A determination that this action may proceed as a class action under Rule 23(b)(1) or, in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.      Designation of Plaintiff as Class Representative and designation of Plaintiff's counsel as Class Counsel;

C.      Actual damages in the amount of any losses Plaintiff and the Class suffered, including but not limited to the loss of the value of Plaintiff's NDTCo IRA account (in excess of $200,000) and the cumulative value of all of the losses to all of the Class members' affected NDTCo accounts (in excess of $5,000,000), to be allocated among the Class Members' individual accounts in proportion to each account's losses;

D.      An Order compelling the Defendants to make good to Plaintiff and the Class all losses resulting from Defendants' fiduciary and other breaches and to restore to Plaintiff and the Class any and all profits that any of the Defendants realized through the use of Plaintiff's and the Class's assets, and to restore all profits which the participants would have made if the Defendants had fulfilled their fiduciary and other obligations to Plaintiff and the Class;

E.      An order enjoining Defendants from any further violations of their fiduciary responsibilities, obligations, and duties;

F.      An award of pre-judgment interest;

G.      An award of attorneys' fees pursuant to the applicable state consumer protection acts or other statute; and

H.     Such other and further relief as the Court deems equitable and just.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

### DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

Respectfully submitted by,

/s/ Scott C. Nehrbass
Scott C. Nehrbass, KS #16285
Maria Drouhard, KS #29476
FOULSTON SIEFKIN LLP
7500 College Blvd. Ste. 1400
Overland Park, KS 66210-2000
Phone:  913.253.2144
Fax:    913.498.2101
Email: snehrbass@foulston.com
          mdrouhard@foulston.com

Boyd A. Byers, KS #16253
Jeff P. DeGraffenreid, KS #15694
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
Phone:  316.267.6371
Fax:    316.267.6345
Email: bbyers@foulston.com
          jdegraffenreid@foulston.com

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASS
